## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | **Case No. CR-24-287-G** |
| | ) | |
| **LANDON KYLE SWINFORD,** | ) | |
| **a/k/a Landon Strohbart,** | ) | |
| **a/k/a Usama Sajid Al-Hashim,** | ) | |
| **a/k/a Abu Labeeb Al-Amriki,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney


s/ MATT DILLON
Assistant U.S. Attorney
Bar No. 19321
210 W. Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8755 (office)
Matthew.Dillon@usdoj.gov

# **TABLE OF CONTENTS**

Page(s)

PROCEDURAL BACKGROUND ............................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................ 2

BACKGROUND OF INVESTIGATION ................................................................ 3

ARGUMENT AND AUTHORITY ........................................................................ 18

I.      The PSR Incorrectly Omits the Hate Crime Motivation Adjustment Under
        U.S.S.G. § 3A1.1(a) ................................................................................... 18

II.     The PSR Correctly Applies the Terrorism Enhancement Under
        U.S.S.G. § 3A1.4(a)................................................................................... 21

III.    The United States Submits a Downward Variance to a Term of Ten Years of
        Imprisonment on Count 2 is Appropriate ............................................... 26

CONCLUSION ..................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### Federal Cases

*Holder v. Humanitarian Law Project,*
    561 U.S. 1, S.Ct. 2705, 177 L.Ed.2d 355 (2010) ................................................. 22

*United States v. Alowemer,*
    96 F.4th 386 (3d Cir. 2024) ..................................................................................... 25

*United States v. Aref,*
    *No. 04-CR-402*, 2007 WL 804814 (N.D.N.Y. Mar. 14, 2007) ............................ 22

*United States v. Arnaout,*
    431 F.3d 994 (7th Cir. 2005) .................................................................................. 23

*United States v. Assi,*
    428 Fed. App'x 570 (6th Cir. 2011) ...................................................................... 22

*United States v. Assi,*
    586 F. Supp. 2d 841 (E.D. Mich. 2008) ............................................................... 22

*United States v. Awan,*
    607 F.3d 306 (2d Cir. 2010) .................................................................................. 23

*United States v. Bell,*
    81 F. Supp. 3d 1301 (M.D. Fla. 2015) .................................................................. 22

*United States v. Cromiti*e,
    No. CR-09-558-CM, 2011 WL 2693293 (S.D.N.Y. Jun. 29, 2011) ..................... 20

*United States v. DeAmaris,*
    406 F. Supp. 2d 748 (S.D. Tex. 2005) .................................................................. 22

*United States v. Fidse,*
    862 F.3d 516 (5th Cir. 2017) ................................................................................. 23

*United States v. Hassan*
    *742 F.3d 104* (4th Cir. 2014) ................................................................................. 20

ii

*United States v. Hassan*,
    No. CR-09-216-FL, 2012 WL 147952 (E.D.N.C. Jan. 18, 2012) .................. 19, 20

*United States v. Khan,*
    938 F3d 713 (5th Cir. 2019) ........................................................................ 24

*United States v. Kobito*,
    944 F3d 696 (4th Cir. 2021) ....................................................................... 23

*United States v. Mandhai*,
    375 F.3d 1234 (11th Cir. 2004) .................................................................. 23

*United States v. Muhtorov*,
    329 F. Supp. 3d 1289 (D. Colo. 2018) ....................................................... 22

*United States v. Osadzinski*,
    97 F.4th 484 (7th Cir. 2024) ....................................................................... 25

*United States v. Puerta*,
    249 Fed. App'x 359 (5th Cir. 2007) ........................................................... 22

*United States v. Rahim*,
    860 Fed. App'x 47 (5th Cir. 2021) ....................................................... 24, 25

*United States v. Sherifi*,
    107 F.4th 309 (4th Cir. 2024) ..................................................................... 20

*United States v. Stein*,
    985 F.3d 1254 (10th Cir. 2024) .................................................................. 25

*United States v. Stewart*,
    590 F.3d 93 (2d Cir. 2009) ......................................................................... 22

*United States v. Suarez*,
    893 F.3d 1330 (11th Cir. 2018) .................................................................. 25

*United States v. Thurston*,
    No. CR 06-60069-01-AA et al., 2007 WL 1500176 (D. Or. May 21, 2007) ........ 22

iii

# Federal Statutes

18 U.S.C. § 844 ................................................................................................ 21

18 U.S.C. § 875 ............................................................................................. 1, 21

18 U.S.C. § 2252 ............................................................................................... 1

18 U.S.C. § 2332 ..................................................................................... 21, 22, 23

18 U.S.C. § 2339 ..................................................................................... 21, 22, 23

18 U.S.C. § 3553 ......................................................................................... 3, 27

# Federal Guidelines

U.S.S.G. § 3A1.1 .................................................................... 2, 18, 19, 20, 26

U.S.S.G. §3A1.4 .......................................................... 2, 3, 21, 22, 23, 26

U.S.S.G. § 3D1.2 ............................................................................................ 19

U.S.S.G. § 5E1.1 ............................................................................................ 19

U.S.S.G. § 8B1.1 ............................................................................................ 19

U.S.S.G. § 8B2.1 ............................................................................................ 19

# Other Authorities

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),
    § 301(A)(7), 110 Stat. 1247 ................................................................. 22

Executive Order 13224
    Section 1(b) ........................................................................................... 3

Immigration and Nationality Act,
Section 219 .................................................................................................. 3

Muhammad Hirzin, *Al-ʿAlāqah al-Mutabādilah Baina al-Īmān wa al-Jihād fī Sabīllilah*,
Al-Jami'ah:Journal of Islamic Studies, No 61 (1998), https://aljamiah.or.id/ajis/rt/
printerFriendly/3051/0#:~:text=In%20Islamic%20context%20this%20word,Islami
c%20faith%20and%20its%20honor ................................................................ 7

Lucero, Lora A., *Sentence Enhancement for Racial Hate Crimes Under
U.S.S.G. § 3A1.1(a)*, 89 A.L.R. Fed. 3d Art 1 (2024) .................................... 19, 20

Random House Webster's College Dictionary
104 (2d ed. 1997) ........................................................................................ 23

v

<u>**UNITED STATES' SENTENDING MEMORANDUM**</u>

The United States submits this Sentencing Memorandum for the benefit and use of the Court in fashioning a correct and appropriate sentence in this case.

## PROCEDURAL BACKGROUND

The grand jury returned an indictment on July 17, 2024, charging Mr. Swinford with three counts: (1) transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1); (2) possession of prepubescent child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2); and (3) transmitting a threat in interstate commerce in violation of 18 U.S.C. § 875(c). A violation of count one is punishable by imprisonment for not less than five (5) years and not more than twenty (20) years, a $250,000.00 fine, or both fine and imprisonment, not less than five (5) years and not more than a term of life of supervised release, and a $35,000 special assessment. A violation of count two is punishable by imprisonment for not more than twenty (20) years, a $250,000.00 fine, or both fine and imprisonment, not less than five (5) years of supervised release, and up to $17,000 in special assessments. A violation of count three is punishable by imprisonment for not more than five (5) years, a $250,000.00 fine, or both fine and imprisonment, not more than three (3) years of supervised release, and a $100 special assessment. As part of a plea agreement with the government, Mr. Swinford pled guilty to counts two and three of the indictment and count one will be dismissed after Mr. Swinford is sentenced by this Court.

1

## SUMMARY OF THE ARGUMENT

The United States Probation Office (USPO) has computed Defendant Landon Kyle Swinford's advisory guideline calculation under the United States Sentencing Guidelines (U.S.S.G. or the guidelines). The Probation Officer stated in the final presentence report ("PSR") [Doc. 35] that, based on a total offense level of 31 and a criminal history category of VI, the guideline imprisonment range is 188 months to 235 months.  PSR ¶ 93. The United States, for the reasons stated below, believes the Hate Crime Motivation Adjustment under Section 3A1.1(a) applies.   The PSR correctly concluded that Section 3A1.4(a), commonly called the "terrorism enhancement" applied because the interstate threat sent by the defendant "involved," or was intended to "promote," a federal crime of terrorism.  PSR ¶ 49.  The defendant is not convicted of a federal crime of terrorism, but such a conviction is not required in order for Section 3A1.4(a) to apply according to the plain text of the guideline as well as applicable case law. The defendant has no prior criminal record but, by operation of law, has a criminal history category VI because of the application of Section 3A1.4(a) of the U.S.S.G. and for no other reason. The defense objects to the application of Section 3A1.4(a) and this memorandum addresses these objections and agrees that Section 3A1.4(a) applies in this case.

As noted herein, the United States concludes that, with respect to the child pornography charges only, the automatic application of a criminal history category VI overrepresents the defendant's criminal history because he has no prior criminal convictions and the terrorism enhancement does not otherwise apply to the child

2

pornography crimes because those offenses, unlike the interstate threatening communication, were not "intended to promote a federal crime of terrorism." Section 3A1.4(a). In light of this consideration, the United States believes a sentence of 120 months would be sufficient but no greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. 3553(a)

## BACKGROUND OF INVESTIGATION

On or about May 18, 2023, Mr. Swinford, made contact with an undercover law enforcement officer ("UCE") on a social media platform after he posted Islamic State of Iraq and al-Sham ("ISIS")[1] propaganda. Mr. Swinford told the UCE he had been a non-Muslim for eighteen years and resided in Oklahoma. Mr. Swinford remained in communication with the UCE until October 22, 2023. During these subsequent communications, Mr. Swinford expressed a desire to travel overseas to fight with ISIS, suggesting the UCE and him travel together. If unable to travel, Mr. Swinford suggested,

---

[1] On or about October 15, 2004, the U.S. Secretary of State designated al Qaeda in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act (the "INA") and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224. On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the INA and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the FTO listing: the Islamic State of Iraq and al-Sham (*i.e.*, "ISIS"— which is how the FTO will be referenced herein), the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS. To date, ISIS remains a designated FTO.

"And if we can't leave, inshallah[2] we will create a battlefield here. The kufr[3] will tremble beneath our boots either way."

Mr. Swinford also sent ISIS propaganda to the UCE, including four videos of ISIS fighters executing and beheading captives. On or about June 17, 2023, Mr. Swinford texted the UCE, "If I can't go to Sham [Syria] for Jihad,[4] I'll just go to Walmart." FBI located video of Mr. Swinford using his mobile telephone in Walmart when this message was sent.

Mr. Swinford told the UCE that an unspecified contact told him that he could travel to Tunisia. FBI's subsequent review of Mr. Swinford's Meta account revealed that he told another user, "I still live in America; I want to leave so I can fight for God." The other user replied, "You have to fight for the sake of Allah my brother You can come to Tunisia." Mr. Swinford sent pictures of firearms to the UCE noting that "…they would do wonders on the Kuffar [infidels]." Mr. Swinford also sent a picture of himself displaying the "Tawhid" finger and an ISIS flag in the background.[5]

---

[2] In'sha'allah means "God willing" when translated literally. It is based on the Quran's teaching that nothing occurs apart from God's will.

[3] Kufr means non-believers, referring to people who do not believe in the Muslim faith.

[4] Jihad is the spiritual struggle within oneself against sin or a struggle or fight against the enemies of Islam.

[5] Mr. Swinford is displaying the "Tawhid" gesture in the same manner that ISIS militants pose. Signaling tawhid is the gesture of raising one's index finger to denote one's belief in monotheism. Monotheism is a key component of the Muslim faith and is part of Islamic daily prayers. The raised index finger, or "tawhid finger," is used by ISIS militants to signify the oneness of God in Islam. While this gesture is common among Muslims, ISIS uses it in other contexts to signal its support for acts of terrorism. More



On June 28, 2023, Mr. Swinford texted the UCE his manifesto. It reads as follows:

I swear to Allah that my loyalty and service is to him and to the Islamic state. I am a servant of Allah, my duty is to fight for him and my ummah.[6] My brothers and sisters suffer every day, the kuffar will get that in return, in'sha'allah. I call out everyone reading this, embrace islam and fight for your lord. Fight for his sake and destroy his enemies, surely Paradise will await you. My mission is to fight for the sake of Allah and to spread Islam. This mission will not end until the entire land is ruled by the word of Allah and by the laws of Islam. The Islamic state will expand and i swear that i will fight until the law of Allah is established everywhere. if someone doesn't love our lord and denies him, i have to fight them. i will not sit and do nothing as the kuffar take everything. Brothers we must fight them. Allah created everything and fighting for his cause is the least we can do. He is the Supreme and he will help us destroy his enemies. my lord is great, and all glory is to him. Allah guides me and his other servants to Jihad. Our lord will get our loyalty until we breathe our last breath and enter paradise. For the sake of Allah, I will slaughter kuffar alongside my brothers. You must accept it, this war will end with all of the kuffar destroyed and we will be victorious. we have Allahs forgiveness and mercy on our side, he will help us on our path of jihad. none has the right to be worshipped but Allah.

I will live a precious life in a land ruled by Shariah or be a martyr for the cause of Allah. i will settle for nothing less than Allahs love. I ask Allah to

---

specifically, when ISIS uses this gesture, it is affirming their ideology that demands the destruction of the West and polytheism.

[6] Ummah means the whole community of Muslims bound together by ties of religion.

make it easy for my brothers and sisters under persecution to fight back against their kuffar oppressors. Allah is my objective, the Queen is my constitution, the prophet is my leader, jihad is my duty, and death for the sake of Allah is my dream. May Allah reward me justly for my deeds. we as believers need to advance on the armies of kuffar. we must slaughter their soldiers and destroy their might. To cast terror into the eyes of the enemies of Allah is beautiful thing. i do not care if the world calls me a terrorist, I will cast terror for the sake of Allah."

FBI eventually located multiple social media accounts belonging to Mr. Swinford in which he sent ISIS propaganda and promoted violence. On one account, Mr. Swinford messaged another user, "I would love to move out of this country for jihad." The other user asked why he hated America. Mr. Swinford responded,

"There are many reasons. 1. Kufr everywhere, I cannot go anywhere without seeing homosexuality. 2. They killed many Muslims and tried to end the Islamic State. 3. They are making it where killing babies is okay. 4. Men who pretend to be women are being allowed into women restroom. 5. It is not Muslim country with no Sharia."

On August 29, 2023, Mr. Swinford spoke to the UCE about the mass shooting event in Jacksonville, which occurred on August 26, 2023. Mr. Swinford stated, "Let's make it a goal to make it every day." On September 4, 2024, Mr. Swinford told the UCE he had talked to one of his kuffar friends, who told him that Mr. Swinford's vehicle would only be big enough to run over six homosexuals. Mr. Swinford told the UCE that would not be enough homosexuals.

On September 25, 2023, Mr. Swinford sent the UCE an ISIS Bayat allegiance video. The video begins with various shots of a small creek and surrounding landscape, including

a vehicle overpass bridge. A nasheed[7] plays in the background. Mr. Swinford comes onscreen wearing a black shirt, a white spray sock, and a backwards trucker cap. Throughout the video, a knife is flashed on screen and he displays the Tawhid gesture.



Mr. Swinford says:

> "As-salamu alaykum my brothers. My name's Abu Labeeb al-Amriki and today I pledge allegiance to the Islamic state. I sit here in the west, home of the kuffar and I'm absolutely sickened. My fellow Muslims are oppressed. Yehudi [Jew], Murtadeen [apostates], kuffar – you vile scum will taste the blood of our knives whether you are here in America with me or in the farthest corner of Asia. I beg thee my brothers, make hijrah[8] if you can. Jihad fi sabilillah[9] is the only way we can get rid of these scum. And as I mentioned my brothers, I pledge

---

[7] A nasheed is an Islamic song, typically sung without instruments. Extremists make nasheeds containing language that encourage violence or hijrah.

[8] Hijrah is an Arabic term meaning migration to an Islamic Land. ISIS supporters commonly refer to hijra as leaving Dar al Kufr (Land of the Non-believers) to emigrate and join ISIS overseas.

[9] Jihad fi sabilillah means a war fought to protect the Islamic faith and its honor. Muhammad Hirzin, *Al-ʿAlāqah al-Mutabādilah Baina al-Īmān wa al-Jihād fī Sabīllilah*, Al-Jami'ah: Journal of Islamic Studies, No 61 (1998), https://aljamiah.or.id/ajis/rt/printerFriendly/3051/0#:~:text=In%20Islamic%20context%20this%20word,Islamic%20faith%20and%20its%20honor.

allegiance to the Islamic state, walahi [I swear to God]. The flames of my revenge are only now beginning to burn. Allahu Akbar."

The video cuts to a burning Israeli flag and resumes playing a nasheed.[10]



FBI was later able to recover the remnants of the flag and lighter fluid at the location Mr. Swinford filmed his Bayat video.

On September 30, 2023, Mr. Swinford attended a University of Oklahoma football game with his grandparents. Mr. Swinford text the UCE that he had looked at barricades and security and thought the stadium could be a potential target for an attack.

On October 3, 2023, Mr. Swinford texted the UCE, directing him to Mr. Swinford's public Instagram account, @alamrikimedia. On the account, Mr. Swinford posted a statement that read, "CAST FEAR INTO THE HEARTS OF THE KUFFAR THIS HALLOWEEEN Dress up as your favorite mujahideen and Bomb a synagogue." Another post read, "Spice up your autumn with some cold-hearted JIHAD FISABILILLAH."

---

[10] This video was sent by Mr. Swinford twelve days prior to the Hamas-led attack on Israel.

On October 10, 2023, Mr. Swinford texted the UCE that he had researched New Orleans as a potential target and had calculated the distance from Oklahoma to New Orleans. He further suggested that he and the UCE could scout the area together.

On October 13, 2023, Mr. Swinford met with the UCE in or around Norman, OK. Mr. Swinford indicated to the UCE that his preferred plan was to travel overseas for hijrah in the Middle East. Mr. Swinford indicated he still needed to obtain a passport and that his parents maintained documents he would need to complete a passport application. Mr. Swinford also stated that he needed more money to complete such action. The UCE offered an alternative means to travel overseas without a passport (such as the use of a freight ship) and Mr. Swinford appeared to be interested in this option.

Mr. Swinford was excited that the "brothers" had liked his Bayat allegiance video. The UCE told Mr. Swinford that "the Brother" asked the UCE to meet with Mr. Swinford and see if he was "for real." Mr. Swinford responded, "Do I need to shoot someone?" The UCE responded, "What?" Again, Mr. Swinford asked, "Do I need to shoot someone or something?" The UCE stated that he did not want to shoot anyone and Mr. Swinford asked, "You don't want to?" The UCE explained that it would require planning. Mr. Swinford responded, "I know…If only it was that easy." Mr. Swinford and the UCE then went to scout the Gaylord Memorial stadium as a potential attack target.

Mr. Swinford indicated his backup plan would be to conduct an attack in the U.S., but he stated there were better targets than Oklahoma. Mr. Swinford suggested that they

target New Orleans. There was some discussion about how such a plan would be executed. Mr. Swinford mentioned that he needed to obtain guns for any U.S.-based operation.

Mr. Swinford did not commit to either plan at the time, nor did he provide a timeline of when he would travel or carry out an attack. Based on the UCE's interaction with Mr. Swinford, the obstacles of traveling overseas, and his lack of money, it appeared there was not an imminent threat of violence from him in the Oklahoma area and that travel plans were something Mr. Swinford planned to work on over an extended period of time.

On October 15, 2023, Mr. Swinford texted the UCE that he was going to continue to do research into New Orleans and sent two hyperlinks to YouTube videos on butane-based explosives. He then texted, "Now imagine an entire U-Haul truck full of it," followed by a photograph of a U-Haul truck. Mr. Swinford told the UCE they needed to get a remote detonator, surround the detonator with propane tanks, and fill a U-Haul up with butane gas. He told the UCE that propane tanks are available at gas stations for them to use. Mr. Swinford texted that the UCE would need to figure out if the contact [for hijrah] would be able to get them a ship in Louisiana for the rest of the plan.

On October 16, 2023, Mr. Swinford texted the UCE a screenshot of articles regarding the death of a six-year-old child in Illinois being stabbed to death for being Muslim. Mr. Swinford later stated he had gone to a restaurant and that he wanted to stab everyone in the restaurant because the entire country should pay for the young child's death. He continued texting that the kuffar would pay and they [Mr. Swinford and the UCE]

10

would slit every single throat until they [Mr. Swinford and the UCE] would be standing knee deep in blood and their brothers and sisters were avenged for the sake of Allah.

On the same day, Mr. Swinford texted the UCE that Mardi Gras in New Orleans would take place in February, that he would continue to research the streets to see where the celebration takes place, and that he would also check if the New Orleans Pride Parade was anywhere near it. Mr. Swinford later texted the UCE that he had already picked a target. He stated that he wanted to attack the "Voodoo Temple" and that his plan was to douse the place in gasoline and place ten to twenty butane cans for an explosion. Mr. Swinford stated that he and the UCE would need to do reconnaissance on the location together first, but thought the attack could take place in 2024. Mr. Swinford stated that he wanted to make sure that everything in the temple would be destroyed and he would not mind killing the voodoo priestess if the opportunity presented itself.

On October 17, 2023, Mr. Swinford texted the UCE that he had an idea for the "voodoo temple" and that they would need two to five more brothers with them for the "operation." On October 18, 2023, Mr. Swinford explained his plan would be to enter the temple just before closing and they [Mr. Swinford and the UCE] along with the brothers would gather all the people in the temple and put them on their knees. They would then cover all the windows and a brother would lock the exits and stand guard. One of the brothers would then start video recording Mr. Swinford as he executes the priestess while the brothers execute the other people. After the executions, they would douse the temple

with fuel and "put some of those homemade things I showed you in the videos [referencing the YouTube videos as described above]."

On October 19, 2023, the UCE inquired why Mr. Swinford was still studying for the aviation vocational school and wanted to know if Mr. Swinford was serious about his plans. Mr. Swinford told the UCE attending the school would be a "cover." Mr. Swinford said he knew gathering supplies for his plans would take time and he needed to do something to divert his parents' attention.

On October 19, 2023, the UCE texted Mr. Swinford about serious news he had purportedly received from the brothers. The UCE told Mr. Swinford a cargo ship in New Orleans would leave from New Orleans in approximately 40 to 45 days and it would cost $550 to travel. The cargo ship would then transport them overseas to Egypt and from there, brothers would take them to Sanaa, Yemen.

On October 19, 2023, Mr. Swinford texted the UCE that he would begin coming up with a cover story to travel to New Orleans to tell his parents. Mr. Swinford said since he still lived with his parents, he usually tells them where he goes during the day so he would fabricate a believable story of why he would travel to New Orleans.

On October 19, 2023, the UCE texted Mr. Swinford that the brothers would need a down payment for hijrah to make sure he was serious about travel. Mr. Swinford asked the UCE how to make the payment and questions regarding the use of money applications or money services such as Western Union or MoneyGram.

12

On October 19, 2023, Mr. Swinford texted the UCE that they did not have to do the bombing plan and that he would just make hijrah instead. Mr. Swinford stated making hijrah would fulfill their obligation without excuses since making hijrah is an order. Mr. Swinford told the UCE that they could conduct the bombing plan in New Orleans if it could be successfully done without jeopardizing making hijrah. Mr. Swinford said the mindset would be to conduct the attack if able, but the main goal would be making hijrah.

Mr. Swinford asked the UCE for explicit directions on how to use a money service like MoneyGram or Western Union. After explanation of how to use the service, Mr. Swinford told the UCE there was a Western Union in a Wal-Mart located in Norman, OK. Mr. Swinford said he would be in Norman, OK on Wednesday (October 25, 2023) he would go to make the money transfer for hijrah.

On October 20, 2023, Mr. Swinford asked the UCE to give him step-by-step directions how to make the money transfer so he would not do anything wrong. Mr. Swinford also asked the UCE if he could just use cash instead of a debit card because he did not want his mother to see charges in his bank account. Mr. Swinford also texted the UCE that he had made a cover story to tell his parents on why he would be traveling to New Orleans. He would tell his parents he was going to stay at a friend's house for a few days. Mr. Swinford said once he got on the boat in New Orleans, he would destroy his phone because he did not want to be tracked and figured his parents may make a missing person report.

13

On October 21, 2023, Mr. Swinford texted the UCE that his mother had come into his bedroom looking for a Halloween costume for his younger brother. Mr. Swinford believed that his mother must have found his thobe and kufi[11] in his room because they were missing. Mr. Swinford did not know how his parents would handle finding the items but said he would not tolerate his parents trying to convert him back from Islam to Christianity. Mr. Swinford said he would lie to his parents and state the thobe and kufi were for a Halloween costume. Mr. Swinford told the UCE he believed he would get in trouble with his parents. Further, Mr. Swinford texted the UCE via Mr. Swinford's cell phone stating he had located more Western Union locations for the transaction. Mr. Swinford asked the UCE if $100 would be enough for a down payment because he wanted to save money for supplies for the journey.

On October 22, 2023, all conversations, to include text, telephonic, and social media, stopped between Mr. Swinford and the UCE. Pen register and trap and trace data showed the last outgoing data at approximately 2:49 PM on or about October 22, 2023. Data also showed that from on or about October 23, 2023, to on or about October 25, 2023, no outgoing communications from Mr. Swinford's cell phone. During the same time frame, a ping of Mr. Swinford's cell phone showed that the device did not leave his residence.

---

[11] A thobe is a traditional long sleeve Middle Eastern robe. A kufi is a brimless, short cap traditionally worn in the Middle East.

14

On October 25, 2023, the ping data stopped producing results and gave notification, "CARRIER FAILED TO LOCATE PHONE."   Mr. Swinford's cell phone was still an active line but indicated his phone has either been turned off or died.

On November 16, 2023, Swinford's mother posted on her public Instagram account a photograph of Mr. Swinford holding an acceptance letter from the Moore Norman Technology Center. The caption on the account stated that Mr. Swinford had been accepted for the aviation mechanic school and would be attending in February 2024.

On March 5, 2024, the FBI conducted a non-custodial interview of Mr. Swinford. During this interview, Mr. Swinford said he had multiple social media accounts on multiple social media platforms. Mr. Swinford stated he created multiple accounts that were not in true name in order to avoid detection.  Mr. Swinford admitted to making posts telling others to conduct fisabilillah jihad and to bomb your local synagogue.  He said that the posts were meant to inspire others to conduct an attack on behalf of ISIS.

Mr. Swinford admitted to meeting with an individual he believed to be affiliated with ISIS and scouting the OU football stadium.  Mr. Swinford was asked if he would have committed the attack if he had the financial means and he said, "Sadly, yes."

Mr. Swinford told the FBI that (405) XXX-9059 was his phone number.  Mr. Swinford confirmed he used the phone until he gave the phone to his father in October 2023. Mr. Swinford told the FBI his parents confronted him after discovering the kufi in his room. Mr. Swinford said he initially lied to his parents and told them the kufi was for a Halloween costume, which is consistent with the statement he gave the. Mr. Swinford

15

eventually told his parents he was in contact with someone he believed to be a member of ISIS [the UCE]. Mr. Swinford said his father asked Mr. Swinford to give his cellphone to him. Mr. Swinford said he gave the cellphone to his father willingly because he believed giving up the cellphone was the best way to get out of the situation. Mr. Swinford's parents gave Mr. Swinford a new cellphone with a new number as a replacement to his original phone.

Mr. Swinford told the FBI he utilized his residence's Wi-Fi via his cellphone when accessing his various social media accounts. Mr. Swinford said he utilized his phone to communicate with individuals who he believed were associated with ISIS and to operate his numerous social media accounts.[12] Mr. Swinford told the FBI he used his social media accounts to communicate with people he believed were members of ISIS and to post ISIS material/propaganda. Mr. Swinford admitted to FBI that he utilized his phone to research the YouTube videos on butane and propane-based explosions, research on New Orleans, specifically the Mardi Gras celebration and the voodoo temple.

On March 19, 2024, FBI provided the known IP address of Mr. Swinford to the Oklahoma State Bureau of Investigation (OSBI) to query against their holdings with the National Center of Missing and Exploited Children (NCMEC). On March 20, 2024, OSBI provided seven Cybertip reports that NCMEC had previously submitted to OSBI. Those

---

[12] On or about March 5, 2024, the FBI conducted a federal search warrant at Mr. Swinford's residence. Mr. Swinford's cell phone associated with +1 (405) XXX-9059 was recovered at the residence. Mr. Swinford's father confirmed he had taken custody of Mr. Swinford's cell phone in October 2023 and attempted to destroy it.

reports indicate that on or about April 23, 2023, and July 1, 2023, Mr. Swinford's IP address was utilized to access child pornography.

On March 25, 2024, the FBI conducted a secondary non-custodial interview of Mr. Swinford. During the interview, Mr. Swinford stated he used various alias names in making social media accounts.  At least two of these names were used for accounts that were part of the NCMEC report.

On July 12, 2024, FBI conducted a third non-custodial interview of Mr. Swinford. Mr. Swinford again admitted that he made the post to his Al-Amriki Media Instagram account referencing bombing a synagogue on Halloween.  He said he made the posts to get the attention of higher-ranking members of ISIS and to spread the message of ISIS. Mr. Swinford said he chose the synagogue because there is a lot of antisemitism and the desire to kill Jews in Muslim culture. He further stated that at the time of the post he wanted to harm Jewish people and the post was intended to strike fear into the Jewish community. Mr. Swinford said he knew that the post could be perceived as a threat. Mr. Swinford said he does not have anything against Jewish people now, but at the time of the post, he intended the post to cast fear and be perceived as a threat. He said the other post, regarding "spice up your autumn with some Jihad Fisabilillah" that it was intended to be a non-specific threat to a broader group, rather than just Jewish people. He left Al-Amriki Media public to allow more people to see the posts.

## ARGUMENT AND AUTHORITY

**I.    The PSR Incorrectly Omits the Hate Crime Motivation Adjustment under U.S.S.G. § 3A1.1(a).**

The PSR incorrectly omits the Hate Crime Motivation Adjustment under Section 3A1.1(a) of the United States Sentencing Guidelines (U.S.S.G.).  Mr. Swinford's offense involved a victim selected on the basis of religion and/or ethnicity.  Section 3A1.1(a) provides: "If the finder of fact at trial or, in the case of a plea of guilty or nolo contendere, the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim or *any property* as the object of the offense of conviction because of the actual or perceived race, color, *religion*, national origin, *ethnicity*, gender, gender identity, disability, or sexual orientation of any person, increase by 3 levels." U.S.S.G. 3A1.1(a) (emphasis added).

The USPO states that Section 3A1.1(a) does not apply because, "[t]ypically" the enhancement has been applied when a "specific person or group" is the target of the threat rather than a "general threat." PSR at 24. The United States respectfully disagrees with USPO's rationale.  First, this is not a general threat.  Mr. Swinford did not say to bomb a "place of worship" or even a "church."  He specified to "[b]omb a synagogue."  A synagogue is a place of worship unique to the Jewish faith, whereas a "church" could be a generic term for a house of worship of many different faiths.  Mr. Swinford admitted he chose the synagogue *because* there is a lot of antisemitism and the desire to kill Jews in Muslim culture.  Further, the Jewish people are a specific ethnicity.  Mr. Swinford's selection of a specific target can also be shown through the words and actions in his Bayat

18

video — "Yehudi [Jew], Murtadeen [apostates], kuffar – you vile scum will taste the blood of our knives …."  Mr. Swinford then burned the Israeli flag.

Second, Section 3A1.1(a) does not require an identifiable victim or property to be the object of the offense.  Rather, the adjustment uses the broader term "any" victim or property. If the United States Sentencing Commission had wished to narrow the scope of the adjustment as USPO suggests, it could have required an "identifiable victim."  Indeed, when the Sentencing Guidelines seek to limit their application to an identifiable victim, they do so.  *See, e.g.,* U.S.S.G. § 3D1.2, comment. (n.2) (Groups of Closely Related Counts); § 5E1.1 (Restitution, Fines, Assessments, Forfeitures); § 8B1.1 (Restitution – Organizations); and § 8B2.1, comment. (n.6) (Effective Compliance and Ethics Programs) (making specific reference to an "identifiable victim").

The USPO relied upon an article in *American Law Reports* to support its position. *Id.* at 24 n.5 (citing Lucero, Lora A. *Sentence Enhancement for Racial Hate Crimes Under U.S.S.G. § 3A1.1(a)*, 89 A.L.R. Fed. 3d Art. 1 (2024)).  But that same article also discusses *Unite States v. Hassan*, No. CR-09-216-FL, 2012 WL 147952 (E.D.N.C. Jan. 18, 2012) (unpublished).   In *Hassan*, the defendant objected to the Hate Crime Motivation Adjustment under Section 3A1.1(a), but the district court found that the adjustment was "properly applied" because the defendant "conspired to commit terrorist acts aimed at 'kuffar,' or non-Muslims, and focused substantial effort in planning and readiness for battle against those targeted." *Id*. at *4 n.3.   The district court further noted that the defendant and his co-conspirator "persisted in subsequent years to promote violence through their

19

words, and endorsement of the teachings of others intent on violent jihad, including with regard to works of Anwar al-Awlaki, by then well-established in Yemen with al-Qaeda." *Id.* at *1. Similarly, in *United States v. Cromitie*, No. CR-09-558-CM, 2011 WL 2693293 (S.D.N.Y. Jun. 29, 2011) (unpublished), a district court applied the Section 3A1.1(a) adjustment when the defendant's victims were synagogues. As the *American Law Reports* notes: "The trial record established that at least two of the defendants agreed to target the synagogues because of their dislike of Jews." Lucero, Lora A. *Sentence Enhancement for Racial Hate Crimes Under U.S.S.G. § 3A1.1(a)*, 89 A.L.R. Fed. 3d Art. 1 (2024) (discussing *Cromitie*).

It is clear, beyond a reasonable doubt, that Mr. Swinford intentionally selected victims and property as the object of his offense of conviction because of their religion and ethnicity. As in *Hassan*, Mr. Swinford also attempted to promote violence through words and had specifically included the "kuffar" in addition to Jews. *See United States v. Sherifi*, 107 F.4th 309, 319 (4th Cir. 2024), citing *United States v. Hassan*, 742 F.3d 104, 116 (4th Cir. 2014) (holding that the district court correctly applied the "hate-crime enhancement" where defendant conspired to "'advance violent jihad,' which to them meant 'fighting the kuffar,' a derogatory word for non-Muslims.") In June 2023, Mr. Swinford also told the UCE, "Ig [I guess] I got that Hitler mindset [crying laughing emoji]. SWI_032162. While this might not be the "typical" set of facts that § 3A1.1(a) is applicable to, its application is warranted.

## II.    The PSR Correctly Applies the Terrorism Enhancement under U.S.S.G. § 3A1.4(a).

The USPO has appropriately included an adjustment pursuant to U.S.S.G. § 3A1.4(a).  PSR ¶ 49.  Mr. Swinford has objected to this adjustment because (1) "there is no evidence Mr. Swinford's offense was calculated to influence or retaliate against government conduct, and (2) 18 U.S.C. § 875(c) is not an enumerated offense in 18 U.S.C. § § 2332b(g)(5)(B)(i).[13]  PSR at 24 (stating Defendant's objection to ¶ 49).   Defendant's criminal conduct was intended to support and promote ISIS, a foreign terrorist organization whose goals include intimidation and destruction of the United States and Israeli governments. Therefore, the government adopts the response of USPO.

Section 3A1.4(a) applies where "the offense is a felony that involved, or was *intended to promote*, a federal crime of terrorism."  U.S.S.G. §3A1.4(a).  For the purposes of the guideline, a federal crime of terrorism is defined by 18 U.S.C. § 2332b(g)(5); that is an offense that — "(A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of — (i) … 844(i) (relating to arson and bombing of property used in interstate commerce), 2332a (relating to use of weapons of mass destruction), 2339A (relating to providing material support to terrorists), [or] 2339B (relating to providing material support to terrorist organizations)." (emphasis supplied). In this case the crime the defendant was intending to

---

[13] Mr. Swinford's remaining objections are related to the guideline calculation due to the inclusion of the adjustment pursuant to U.S.S.G. § 3A1.4.

promote was the material support to ISIS, in violation of Section 2339B, as well as the other quoted crimes.

Moreover, the government to be affected does not have to be the United States government. *See United States v. DeAmaris*, 406 F. Supp. 2d 748, 749-50 (S.D. Tex. 2005); *cf. United States v. Assi*, 428 Fed. App'x 570, at 574 (6th Cir. 2011) ("A review of pertinent case law shows that the term 'government' in 18 U.S.C. § 2332b(g)(5) includes foreign governments and therefore is not limited to acts against the United States.") (unpublished); *see also United States v. Puerta*, 249 Fed. App'x 359, 360 (5th Cir. 2007) (unpublished); *United States v. Bell*, 81 F. Supp. 3d 1301, 1312 (M.D. Fla. 2015) (applying § 3A1.4 to defendant whose goal was to overthrow secular governments and impose Sharia law); *United States v. Assi*, 586 F. Supp. 2d 841, 849 (E.D. Mich. 2008); *United States v. Aref*, No. 04-CR-402, 2007 WL 804814, at *2 (N.D.N.Y. Mar. 14, 2007) (unpublished); *United States v. Stewart*, 590 F.3d 93, 144-45 (2d Cir. 2009), and *United States v. Thurston*, No. CR 06-60069-01-AA et al., 2007 WL 1500176 (D. Or. May 21, 2007) (unpublished).

"As found by Congress and endorsed by the Supreme Court, 'foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct.'" *United States v. Muhtorov*, 329 F. Supp. 3d 1289, 1297 (D. Colo. 2018) (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 47, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010) (quoting Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), § 301(a)(7), 110 Stat. 1247, note following 18 U.S.C. § 2339B (Findings and Purpose)).

"[T]he term 'material support or resources'…includ[es] personnel (1 or more individuals who may be or include oneself) …." 18 U.S.C. § 2339A(b)(1).  "In its ordinary usage, 'promote' means 'to help or encourage.'" *United States v. Fidse*, 862 F.3d 516, 522 (5th Cir. 2017) (quoting *United States v. Arnaout*, 431 F.3d 994, 1002 (7th Cir. 2005) (citing Random House Webster's College Dictionary 1042 (2d ed. 1997)).  "Thus, the word promote, as used in § 3A1.4, signifies that where a defendant's offense or relevant conduct helps or encourages a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)(B), then § 3A1.4 is triggered." *Id.* (internal quotations and citations omitted).  "The application of § 3A1.4 … does not require a finding that [the defendant] was personally motivated by a desire to influence or affect the conduct of government.  Rather, the government need only demonstrate the [the defendant] intended to promote a crime calculated to have such an effect, … whatever [the defendant's] reason for committing them." *United States v. Awan*, 607 F.3d 306, 315–316 (2d Cir. 2010).

"The terrorism enhancement does not hinge upon a defendant's ability to carry out specific terrorist crimes or the degree of separation from their actual implementation … it is the defendant's purpose that is relevant, and if that purpose is to promote a terrorism crime, the enhancement is triggered." *United States v. Mandhai*, 375 F.3d 1234, 1248 (11th Cir. 2004).  The crime of conviction need not itself be a terrorism crime. *United States v. Fidse*, 862 F3d at 521.  "We conclude that 3A1.4 applies even if the defendant couldn't be convicted of a federal crime of terrorism." *United States v. Kobito*, 944 F3d 696, 700 (4th Cir. 2021).

23

Mr. Swinford's own words accomplish what is normally a difficult task – discerning an individual's intent. He made the threat in an overall effort to influence the government of the United States by changing it into one governed by Islamic jurisprudence. As detailed above, Mr. Swinford pledged allegiance to ISIS in his Bayat video and Mr. Swinford's manifesto included his pledge of loyalty to the "Islamic state," that his mission would not end "until the entire land is ruled by the word of Allah and by the laws of Islam," that he wants to live "in a land ruled by Shariah or be a martyr for the cause of Allah," and that "we must slaughter their soldiers and destroy their might." Mr. Swinford then burned an Israeli flag. Also, when asked why Mr. Swinford hates America, two of his reasons were, "They killed many Muslims and tried to end the Islamic State … It is not Muslim country with no Sharia." This shows that he wanted to affect the United States government by changing our country from a constitutional government to one that is ruled by Islamic law.

Mr. Swinford told FBI that the posts were meant to inspire others to conduct an attack on behalf of ISIS. *See United States v. Rahim*, 860 Fed. App'x 47, 54 (5th Cir. 2021) (unpublished) (finding defendant took substantial steps towards providing material support to ISIS including "inciting and counseling users to commit attacks in other countries); *United States v. Khan*, 938 F.3d 713, 719 (5th Cir. 2019) ("Supporting ISIS ... is some evidence that [the defendant's] conduct was calculated to influence or affect the conduct of the United States because ISIS's terrorist acts are intended to intimidate or coerce the United States.").

24

Mr. Swinford also told FBI that he made the posts about the synagogue (the basis of Count 3) to get the attention of higher-ranking members of ISIS and to spread the message of ISIS. *See United States v. Osadzinski*, 97 F.4th 484, 494 (7th Cir. 2024) (finding that helping others spread ISIS propaganda qualified as a service and was therefore material support); *Rahim*, 860 Fed. App'x at 57 (5th Cir. 2021) (finding defendant's activities, including spreading ISIS propaganda, established that he provided material support to ISIS); *United States v. Suarez*, 893 F.3d 1330, 1335 (11th Cir. 2018) (finding that defendant's conduct, including posting ISIS propaganda, was sufficient that a reasonable jury could conclude that he attempted to direct his services to the benefit of a foreign terrorist organization).

"A defendant may have mixed or multiple intents. But if one of them is to influence, affect, or retaliate against government conduct, the enhancement applies." *United States v. Alowemer*, 96 F.4th 386, 389 (3d Cir. 2024). See *United States v. Stein*, 985 F.3d 1254, 1267 (10th Cir. 2024) (holding that mixed intent to influence government and harm Muslims is sufficient for the terrorism enhancement to be applied).

The evidence is overwhelming that Mr. Swinford's crime and conduct involved, or was intended to promote, a federal crime of terrorism and was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. By his own admission, he was mad that the United States had "killed many Muslims and tried to end the Islamic State" and that it did not have Sharia law. He proclaimed his loyalty to ISIS on multiple occasions. He stated, "[t]he flames of my

25

*revenge* are only now beginning to burn." He then burns an Israeli flag – not the symbol of a population, but that of a government. Mr. Swinford wanted to inspire others to commit attacks on behalf of ISIS, to retaliate against the United States for his perceived grievances, and to change the government to one Islamic law – otherwise he would die as a martyr attempting to effectuate that change.

### III.    The United States Submits a Downward Variance to a Term of Ten Years of Imprisonment on Count 2 is Appropriate.

The United States submits that a downward variance to a term of ten years on Count 2 is appropriate in this case. Section 3A1.4 is correctly applied to both counts, but practically it only relates to Count 3. Given the unique interplay between § 3A1.4 and Mr. Swinford's conviction for possession of child pornography in Count 2, the result is an overstatement of his criminal history as it relates to Count 2. Without § 3A1.4's adjustment, his offense total offense level to Count 2 would be 29 and his criminal history category would be I, bringing his advisory guideline range with acceptance of responsibility, to 87–108 months.

The United States would still be advocating for a sentence of ten years even if the Court were to find that U.S.S.G § 3A1.4 did not apply. This is due to the graphic nature of the images and videos that Mr. Swinford possessed and that he had been in communication with minors in which he had discussed sexually explicit acts.

### CONCLUSION

The government respectfully requests this Court find that Mr. Swinford's guideline is subject to adjustments pursuant to U.S.S.G. §§ 3A1.1(a) and 3A1.4(a). However, after

correctly calculating the advisory guideline calculation, the United States submits that a downward variance to a ten-year sentence is appropriate, which is sufficient, but not greater than necessary, to achieve the purposes of sentencing, after consideration of the factors set forth above as they relate to 18 U.S.C. § 3553(a) and the Sentencing Guidelines.


Respectfully submitted,

ROBERT J. TROESTER
United States Attorney


s/ MATT DILLON
MATT DILLON
OBA No. 19321
Assistant United States Attorneys
210 Park Ave., Suite 400
Oklahoma City, OK 73102
(405) 553-8700 (Office)
(405) 553-8888 (Fax)
Matthew.Dillon@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

JP Hill, attorney for Mr. Swinford.


s/MATT DILLON
Assistant U.S. Attorney